FERRELL v. PRAME et al.

(Circuit Court of Appeals, Sixth Circuit. June 13, 1913.)

No. 2,315.

1. APPEAL AND ERROR (§ 1009*)—REVIEW—REVERSAL—FURTHER PROCEEDINGS.

Where, in a suit to restrain a corporation from operating a business in competition with complainant, in alleged violation of a contract between complainant and P., who it was claimed had organized the corporation to evade the contract, it appeared that the corporation was promoted and organized by P.'s son-in-law, who lived and bore close and confidential relations with P., and after plaintiff had called various stockholders of defendant as witnesses, and claimed that their testimony taken together set forth his theory sufficiently to shift the burden of proof to defendants, they continued to rely on their denials of any fraud or subterfuge, and insisted that complainant's burden had not been satisfied, and introduced no proof in their own behalf, a decree dismissing the bill would be reversed and the cause remanded for further proceedings that additional proofs might be taken and the case determined on the facts, and not by an application of rules as to shifting burdens.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

2. WITNESSES (§ 276*)—ADVERSE PARTIES—CONCLUSIVENESS OF TESTIMONY—CROSS-EXAMINATION.

Where, in a suit to restrain a corporation alleged to have been fraudulently organized by P. to enable him to violate a contract with complainant not to engage in a competing business, complainant was compelled to call as his witnesses certain of the defendants interested in the corporation and adverse to complainant, he was not bound in any controlling way by their statements, and was entitled to cross-examine them as adverse witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 976–978; Dec. Dig. § 276.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Northern District of Ohio; William L. Day, Judge.

Suit by Albert T. Ferrell against Frank J. Prame and others. From a decree dismissing the bill, complainant appeals. Reversed and remanded for further proceedings.

Howell, Roberts & Duncan, of Cleveland, Ohio, for appellant.

G. C. Willet, of Cleveland, Ohio, and W. J. Geer, of Galion, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Ferrell and Prame were in partnership; Ferrell bought Prame's interest, and Prame agreed not to engage in a competing business. He violated this agreement, and Ferrell secured an injunction, the issue of which was affirmed by this court. Prame v. Ferrell, 166 Fed. 702, 92 C. C. A. 374, q. v., for fuller statement of facts. Thereupon friends of Prame organized the International Manufacturing Company, which bought his machinery and conducted a business like that in which he had been engaged. Ferrell filed a supplemental bill against this corporation and its stockholders and Prame, alleging violation and evasion of the decree; this bill was finally dismissed; and Ferrell now appeals.

In the view which we take of the case, it becomes immaterial now to determine whether such degree of succession by the new company to Prame's established business as appears by the record is sufficient of itself, and though in good faith, to entitle plaintiff to any relief, and also whether the dependency of the new business upon the patents, issued to Prame as described in the former opinion, makes it obnoxious to Ferrell's rights. Both these inquiries become unimportant if in fact the transfer from Prame to the new company was dominantly colorable; and so we come to consider, as the presently controlling question, whether the new business is what it purports to be, one wholly independent from Prame, or whether it is materially still Prame's business under false colors.

[1] It appears that the new corporation was promoted and organized by defendant Kaylor; that Kaylor is in the position of son-in-law to Prame, living in Prame's family and bearing to him very close and confidential relations; that Kaylor's own stock was paid by a bookkeeping shift between himself and Prame incidental to another business in which they were interested; that subscriptions by some stockholders were made at Kaylor's request without investigation, were accompanied with a proxy to Kaylor, and that the business has never received any further attention from such subscribers; and that Kaylor has been, from the beginning, through apparently permanent proxies from ostensible subscribers, invested with the entire control of the business. The record was left in very unsatisfactory shape. Complainant called various defendants as witnesses, and claimed that their testimony, taken altogether, supported his theory sufficiently to shift to defendants the burden of explanation. Defendants relied upon the de-

nials, in their testimony, of any fraud or subterfuge, insisted that complainant's initial burden had not been satisfied, and took no proofs on their behalf. The details regarding the disposition of the money said to have been paid were left untouched—details like Prame's various bank accounts or other books, in which, naturally, there would be records of his receipt and use of the sums of money claimed to have been paid to him. Courts should not be called upon to dispose of such issues by applying technical rules as to shifting burdens. Proofs are for the purpose of developing the facts, and when each party deliberately fails to exhaust the subject, relying on the weakness of his adversary's case and not on the strength of his own, it may appear, as we think it here appeared, to be well within the discretion of the trial court to direct the taking of testimony to be further pursued, so that the proofs might perform their full function.

But the present case was left to depend upon whether the story of Prame's alleged transfer was, in any material part, too doubtful to be accepted, unless further corroborated. Without now passing upon other features (like the Dick brothers' subscription), which we assume will be persuasively either confirmed or disputed, we think there was one subject upon which, as the record stood, the burden was upon defendants to furnish corroboration. Defendant Monteith testifies that he purchased the two patents from Prame for $6,000; that he subscribed for the same amount of stock in the new company; that he turned the patents over to the company in payment of his subscription; and that he paid Prame by giving his note for $6,000. It also appears that Mr. Monteith is a banker and a man of business experience and pecuniarily responsible; that he did not pay the note, but gave a renewal, without interest; that he made no investigation regarding the validity or scope of the patents; that he had no particular knowledge of the business in which he was taking stock; that he had a long-standing acquaintance with Prame, who was also a banker in a nearby town; that, as stockholder, he executed to Kaylor a power of attorney; and that he has never paid any attention to the business. The sum of all these things is possibly reconcilable with a real and actual purchase by him of these patents from Prame and with a real and actual interest by Monteith in the new business to the extent of $6,000; but they require further explanation and support before they can be accepted at their face value. The natural presumption from these things is that the transaction was a subterfuge and that the stock in fact belongs to Prame.

[2] We think the decree below should be reversed and the record remanded for further proceedings. Under circumstances like those here present, complainant should not be bound in any controlling way by the statements of the defendants in adverse interest whom he was compelled to call as his witnesses, nor prevented from a thorough examination and inquiry of the character of cross-examination. We are persuaded that such an exhaustive resort to all sources of information, either by the parties voluntarily or by direction of the court, will make a record from which the trial court can determine the issues with much better satisfaction than was possible upon the hearing so far had.

The appellant will recover the costs of this court against the company, Praine, Monteith, and Kaylor, the only appellees upon whose conduct the present reversal depends.